GANDARA V. SLADE 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-91-389-CV





RAFAEL AND FELIPA GANDARA, ET AL.,



 
 APPELLANTS


vs.





HARRY W. SLADE, M.D.,



 APPELLEE



 




FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT



NO. 134,488-C, HONORABLE RICK MORRIS, JUDGE 



 




 Rafael and Felipa Gandara, individually and as executor and executrix of the Estate
of Hermalinda Gandara, appellants, appeal from a take-nothing summary judgment rendered
against them in a medical-malpractice suit brought against Dr. Harry Slade, appellee. The only
issue presented by this appeal is whether the Gandaras' cause of action was barred by limitations. 
Based on the record before us, we conclude that Dr. Slade failed to establish that the suit was
barred as a matter of law. Accordingly, we will reverse the judgment and remand the cause for
further proceedings.


BACKGROUND


 On April 23, 1985, Dr. Gary Hassman requested Dr. Slade to render a second
opinion concerning the medical care and treatment of the Gandara's daughter, Hermalinda. Dr.
Hassman had concluded that surgery was needed to correct cervical and lumbar spine problems
that Hermalinda was experiencing. After personally examining Hermalinda on April 23, Dr.
Slade advised her that he agreed with Dr. Hassman's diagnosis and proposed treatment plan. On
April 26 and May 8, 1985, Dr. Hassman, assisted by Dr. Georges Hennard, performed surgery
on Hermalinda. Dr. Slade did not participate in this surgery, and, according to his summary-judgment affidavit, he had nothing to do with Hermalinda's medical care or treatment other than
examining her and rendering a second opinion on April 23, 1985.

 Either during or after the surgeries, Hermalinda underwent several blood
transfusions. More than three years later, on August 23, 1988, Hermalinda was notified that the
donor of the blood that was transfused into her during her treatment in 1985 had tested positive
for the HIV antibody. Hermalinda was later found to be HIV-positive and died from AIDS on
January 20, 1990.

 The Gandaras, individually and as executor and executrix of Hermalinda's estate,
brought wrongful-death and survival causes of action against Dr. Hassman and Dr. Hennard
pursuant to Tex. Civ. Prac. & Rem. Code Ann. §§ 71.002, 71.021 (1986). Dr. Slade was added
as a defendant in February 1991. The Gandaras alleged that Dr. Hassman and Dr. Hennard
committed negligent acts against their daughter by: (1) misdiagnosing her spinal problems; (2)
performing unnecessary surgeries on her; and (3) failing to disclose the risk of contracting AIDS
from a blood transfusion. The Gandaras alleged that Dr. Slade was negligent in April 1985 by:
(1) misdiagnosing the deceased's spinal problems; (2) recommending unnecessary surgeries; and
(3) failing to disclose the incompetence of Dr. Hassman.

 Dr. Slade filed a motion for summary judgment on the grounds that: (1) there was
no material fact issue concerning his negligence; and (2) the Gandaras' suit was barred by
limitations as a matter of law. The trial court granted Dr. Slade's motion and rendered a take-nothing judgment against the Gandaras. On joint motion by the parties, the trial court then
severed the Gandaras' suit against Dr. Slade from their suit against Dr. Hassman and Dr.
Hennard. The Gandaras have appealed the take-nothing judgment to this Court.



STANDARD OF REVIEW


 The standards for reviewing a summary judgment are well established:



1. The movant for summary judgment has the burden of showing that there is
no genuine issue of material fact and that it is entitled to judgment as a
matter of law.


2. In deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the non-movant will be taken as
true.


3. Every reasonable inference must be indulged in favor of the non-movant
and any doubts resolved in its favor.



Nixon v. Mr. Property Mgt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Dr. Slade concedes that
the Gandaras submitted sufficient summary-judgment evidence to raise fact questions concerning
the negligence issue. Therefore, limitations is the only ground remaining to support the summary
judgment, and Dr. Slade had the burden to establish that defense as a matter of law. See Hellman
v. Mateo, 772 S.W.2d 64, 66 (Tex. 1989).


STATUTE OF LIMITATIONS


 Health-care liability claims such as in the present case are subject to the following
limitations provision set forth in the Medical Liability and Insurance Improvement Act of Texas:


 Notwithstanding any other law, no health care liability claim may be
commenced unless the action is filed within two years from the occurrence of the
breach or tort or from the date the medical or health care treatment that is the
subject of the claim or the hospitalization for which the claim is made is
completed.


Tex. Rev. Civ. Stat. Ann. art. 4590i, § 10.01 (Pamph. 1992). (1) Dr. Slade's allegedly negligent
actions occurred on April 23, 1985; however, the Gandaras did not file suit against Dr. Slade until
1991, well past the expiration of the two-year limitations date of April 23, 1987. Therefore, on
the surface it would appear that section 10.01 bars the Gandaras' suit against Dr. Slade. For the
reasons discussed below, however, we conclude that fact issues remain.

 The Texas Supreme Court has held that when applied to certain cases, section 10.01
violates the "open courts" provision of the Texas Constitution. See Neagle v. Nelson, 685 S.W.2d
11, 12 (Tex. 1985); see also Tex. Const. art. I, § 13. According to the supreme court, in order
to challenge the constitutionality of section 10.01 as applied to them, the Gandaras had to allege
that application of the provision would cut off their cause of action before they knew or should
have known that a cause of action existed. See Hellman, 772 S.W.2d at 66. The Gandaras
specifically made such allegations in both their petition and their response to Dr. Slade's motion
for summary judgment. Further, the affidavits that the Gandaras attached to their summary-judgment response raised a fact issue concerning whether they or their daughter knew or
reasonably should have known of Dr. Slade's negligence within two years of April 23, 1985. 
These allegations and summary-judgment proof sufficiently preserved the Gandaras' right to
challenge the constitutionality of section 10.01, as applied to their cause of action. See id.

 Once the Gandaras alleged and presented sufficient facts to challenge the
constitutionality of section 10.01, Dr. Slade had the burden to conclusively establish that there
was no genuine issue of material fact concerning the time when the Gandaras discovered or should
have discovered their cause of action. See id. As discussed above, on appeal from a summary
judgment, we must take as true evidence favorable to the non-movant. Through affidavits, the
Gandaras presented evidence that neither they nor their daughter discovered or should have
discovered the negligent acts of Dr. Slade until some time after their daughter's death on January
20, 1990. The Gandaras stated in their affidavits that they neither knew nor had reason to know
that Dr. Slade had misdiagnosed their daughter's spinal problems and recommended unnecessary
surgeries until after January 20, 1990.

 In response, Dr. Slade points only to the evidence that on August 23, 1988, the
Gandaras learned of the possibility that their daughter may have been infected with the AIDS virus
through a blood transfusion. However, that evidence does not conclusively show when the
Gandaras discovered or should have discovered the foregoing causes of action against Dr. Slade. 
His alleged negligence did not arise from transfusing the deceased with HIV-infected blood during
surgery; rather, according to the Gandaras' summary-judgment evidence, which we must take as
true, it arose from misdiagnosing the deceased's spinal problems, recommending the surgery in
the first place, and failing to disclose the incompetence of Dr. Hassman. Therefore, based on the
record before us, we conclude that a question of fact exists concerning whether the Gandaras or their deceased daughter knew or should have known of Dr.
Slade's negligence more than two years before suit was brought against him.


SURVIVAL AND WRONGFUL DEATH


 As stated above, the Gandaras brought both a survival cause of action and a
wrongful-death cause of action against Dr. Slade. The difference between the two actions lies in
the beneficiaries and the damages. A survival cause of action is brought by the deceased's estate
to redress the deceased's own injuries. See Landers v. B.F. Goodrich Co., 369 S.W.2d 33, 35
(Tex. 1963); Tex. Civ. Prac. & Rem. Code Ann. § 71.021 (1986). A wrongful-death cause of
action is brought by survivors of the deceased to compensate themselves for their loss of future
pecuniary benefits, loss of inheritance, mental anguish, and loss of society and companionship. 
See Moore v. Lillebo, 722 S.W.2d 683, 687-88 (Tex. 1986); Castillo v. Hidalgo County Water
Dist. No. 1, 771 S.W.2d 633, 635 (Tex. App. 1989, no writ); Tex. Civ. Prac. & Rem. Code
Ann. § 71.004 (1986).

 With respect to the survival cause of action brought by the Gandaras on behalf of
their daughter's estate, we point to our conclusion that a question of fact exists regarding when
the Gandaras or their deceased daughter discovered or should have discovered the negligent acts
of Dr. Slade. Because such fact issues remain, Dr. Slade has failed to establish as a matter of law
that the survival action is barred by limitations.

 With respect to the wrongful-death cause of action, such a claim is derivative in
nature. Section 71.003(a) of the Civil Practices and Remedies Code provides that the code
provisions which create the wrongful-death cause of action apply "only if the individual injured
would have been entitled to bring an action for the injury if he had lived." Tex. Civ. Prac. &
Rem. Code Ann. § 71.003(a) (1986). "A wrongful death action cannot be maintained successfully
when the decedent has no cause of action if he survived the injuries." Davenport v. Phillip
Morris, Inc., 761 S.W.2d 70, 71 (Tex. App. 1988, no writ). As discussed above, based on the
record before us, a question of fact exists as to whether the deceased's survival cause of action
is barred; therefore, because the Gandaras' wrongful-death cause of action is derivative of their deceased daughter's own cause of action, Dr. Slade has also failed to establish
conclusively that the wrongful-death suit is barred by limitations. (2)

 Finally, Dr. Slade argues that this case will be controlled by the eventual decision
of the supreme court in Russell v. Ingersoll-Rand Co., 795 S.W.2d 243 (Tex. App. 1990, writ
granted). We disagree. In Russell it was established that the deceased knew he had a cause of
action against the defendant approximately six years before his death, yet he chose not to sue the
defendant. After the deceased's death, his widow filed a wrongful-death claim against the
defendant. The court of appeals held that the wife's wrongful-death action was barred by
limitations because, if he were alive, a suit by the deceased would be barred. See id. at 248. 
Unlike Russell, a question of fact exists in the present case concerning when the Gandaras or their
daughter first knew a cause of action existed against Dr. Slade; therefore, it has not been
established as a matter of law, as it was in Russell, that the deceased daughter, if alive, would be
barred from bringing a cause of action against Dr. Slade.


CONCLUSION


 Based on our foregoing discussion, we conclude that Dr. Slade failed to establish
as a matter of law that the Gandaras' wrongful-death and survival actions were barred by
limitations; therefore, we sustain the Gandaras' point of error, reverse the judgment of the trial
court, and remand the cause for further proceedings.





 

 J. Woodfin Jones, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating]

Reversed and Remanded

Filed: June 10, 1992

[Publish]
1. The Act defines "health care liability claim" to mean "a cause of action against a . . .
physician for treatment, lack of treatment, or other claimed departure from accepted standards
of medical care or health care or safety which proximately results in injury to or death of the
patient." Tex. Rev. Civ. Stat. Ann. art. 4590i, § 1.03(a)(4) (Pamph. 1992).
2. We note there is no question that the Gandaras filed their wrongful-death action against
Dr. Slade within two years after their daughter's death. See Tex. Civ. Prac. & Rem. Code
Ann. § 16.003(b) (1986); see also Moreno v. Sterling Drug, Inc., 787 S.W.2d 348 (Tex.
1990) (holding that the discovery rule does not extend the time for filing a wrongful-death
action beyond two years from the date of the death).